**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 18-cv-00185-RBJ-NYW

KENNETH P. O'HANLON,

      Plaintiff,

v.

ACCESSU2 MOBILE SOLUTIONS, LLC,
EBH, LLC,
MICHAEL COHIG,
PAUL ZORN,
MICHAEL FOSSENIER,
LAWRENCE E. CRANE,
E B H, LLC,
DAVID PALM,
EDSON B. HUTCHINSON, and
JOHN DOES 1–15,

      Defendants.

---

## ORDER AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

Magistrate Judge Nina Y. Wang

      This matter comes before the court on several pending motions:

      (1)     Defendants AccessU2 Mobile Solutions, LLC ("AccessU2"), E B H, LLC, and David Palm's Motion to Dismiss Amended Complaint, or in the Alternative, Motion for Summary Judgment (the "AccessU2 Motion") [#49, filed March 9, 2018];

      (2)     Plaintiff Kenneth P. O'Hanlon's ("Plaintiff" or "Mr. O'Hanlon") "Motion for Disqualification of Attorneys for Defendants on the Grounds of Conflict of Interest, Violation of DR-5 of the Rules of Professional Conduct and Violation of Rules 1.7(a) and 1.9(a) of the Model Code of Professional Conduct" (the "Motion for Disqualification") [#64, filed April 17, 2018];

(3)     Plaintiff's Motion to Amend Complaint and Grant Leave for the Amended Complaint (the "Motion to Amend") [#74, filed May 4, 2018];

(4)     Defendant Michael Cohig's Motion to Quash Service of Process ("Motion to Quash") [#81, filed May 21, 2018];

(5)     Defendant Paul Zorn's Motion to Dismiss Amended Complaint, or in the Alternative, Motion for Summary Judgment (the "Zorn Motion") [#82, filed May 21, 2018];[1] and

(6)     Defendant Michael Fossenier's Motion to Quash Service of Process ("Motion to Quash") [#86, filed May 24, 2018].

The undersigned considers the Motions pursuant to 28 U.S.C. § 636(b), Rule 72 of the Federal Rules of Civil Procedure, and the memoranda dated March 14, 2018 [#54], April 18, 2018 [#66], May 7, 2018 [#78], May 22, 2018 [#83], and May 24, 2018 [#87]. This court concludes that oral argument will not materially assist in the resolution of this matter. Therefore, having carefully reviewed the Motions and associated briefing, the applicable case law, and the entire docket, this court respectfully RECOMMENDS that the AccessU2 Motion and Zorn Motion be GRANTED and Plaintiff's Motion to Amend be DENIED. Further, it is ORDERED that Plaintiff's Motion for Disqualification is DENIED and Defendant Cohig's Motion to Quash and Defendant Fossenier's Motion to Quash are GRANTED.

## BACKGROUND

The court has discussed the background of this matter in several prior Orders, *see, e.g.*, [#6; #18; #26; #62], and discusses it here only as it pertains to the instant Motions. Mr. O'Hanlon initiated this action by filing his *pro se* Complaint on January 24, 2018. [#1]. As Defendants in this action Plaintiff names several limited liability companies ("LLC") and several

---

[1] The Zorn Motion seeks dismissal for the same reasons articulated in the AccessU2 Motion, and he moves to join that motion in its entirety. This court will grant Defendant Zorn's request to join the AccessU2 Motion and will therefore refer to the AccessU2 Motion exclusively.

individuals allegedly associated with those entities (collectively, "Defendants"). [*Id.*]. Plaintiff alleges that Defendants actively deceived and defrauded him to remove him from AccessU2 without fair compensation and robbed him of fair market value for his development of patented technology. *See generally* [#1; #19]; *see also* [#56 at 8]. Following an Order to Show Cause why this matter should not be dismissed for want of subject matter jurisdiction, *see* [#6], and several Motions to Quash Service of Process of the initial Complaint by individual Defendants, *see* [#21; #33; #36], Plaintiff filed his First Amended Complaint ("FAC") on February 13, 2018, *see* [#19], the operative pleading in this matter.

The FAC asserts four claims against Defendants for (1) improperly determining his distributive shares of AccessU2 in violation of 26 U.S.C. § 704(b) and corresponding tax code regulations ("Claim 1"); (2) failing to provide accurate K-1 tax filings and filing fraudulent K-1 tax filings with the Internal Revenue Service ("IRS") in violation of federal tax law ("Claim 2"); (3) improperly valuing Patent No. 7,643,821 B2 (the "'821 Patent") as it relates to his distributive shares of AccessU2 in violation of 26 U.S.C. § 704(b) and corresponding tax code regulations ("Claim 3"); and (4) civil theft of the '821 Patent, unjust enrichment, and violations of the federal Uniform Trade Secrets Act, which this court construes as violations of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §§ 1832, 1836(b) ("Claim 4"). *See* [#19]. The undersigned provided Plaintiff until March 9, 2018, to serve Defendants properly with the FAC. *See* [#26]. Though Mr. O'Hanlon purportedly served Defendants properly, *see* [#40 through #48], several individual Defendants again moved to quash service of process, prompting this court to permit Mr. O'Hanlon to cure any deficiencies in service by May 1, 2018, with the express warning that failure to do so may result in a recommendation that improperly served Defendants be dismissed without prejudice from this action. *See* [#65]. Per Mr. O'Hanlon's

request, he received an additional two weeks to serve Defendants Fossenier and Crane. *See* [#73]. Presently, Defendants Fossenier and Cohig have moved to quash service of process. *See* [#81; #86].

On March 9, 2018, Defendants AccessU2, E B H, LLC, and David Palm moved to dismiss the FAC or for summary judgment in the alternative, because Mr. O'Hanlon's claims are barred by (1) accord, satisfaction, and release, (2) the statute of limitations, and (3) claim preclusion. *See generally* [#49]. The AccessU2 Motion asserts that the legal disputes between Plaintiff and Defendants have been lingering for several years, including prior litigation in the District Court for the City and County of Denver ("Denver District Court"). *See generally* [*id.*]; *see also* [#19 at p.12, ¶ 34]. And, as noted above, Defendant Zorn filed a similar Motion on May 21, 2018. [#82].

Plaintiff then filed his Motion for Disqualification on April 17, 2018. *See* [#64]. He contends that the court should disqualify defense counsel Stuart Mann from representing all Defendants, because a conflict of interest exists among the Defendants given that Mr. O'Hanlon seeks to hold each accountable to varying degrees, which may pit several Defendants against one another. *See generally* [*id.*]. He also asserts that not all Defendants have consented to Mr. Mann's representation such that Mr. Mann's representation of all Defendants is materially limited because he may abdicate his responsibilities to some Defendants as opposed to others.

On April 20, 2018, Plaintiff filed a proposed Second Amended Complaint [#67], which the undersigned struck for failure to comply with the Federal Rules of Civil Procedure as well as this District's Local Rules of Civil Practice. *See* [#68]. But given Mr. O'Hanlon's apparent desire to file a Second Amended Complaint, this court set a deadline of May 8, 2018 for the

joinder of parties and amendment of pleadings. *See* [*id.*]. Mr. O'Hanlon filed the instant Motion to Amend on May 4, 2018 [#74].

The Motions are now ripe for disposition and/or recommendation. This court first considers Plaintiff's Motion for Disqualification given the potential consequences on the action in general should the court prohibit Mr. Mann from continuing to represent Defendants. Next, I consider the Motion to Amend, because a superseding complaint moots any Motions to Dismiss aimed at an inoperative pleading. *See Gotfredson v. Larsen LP*, 432 F. Supp. 2d 1163, 1172 (D. Colo. 2006). Given this court's conclusion on the Motion to Amend, I then turn to the AccessU2 Motion and the Motions to Quash. In considering each of these motions this court affords a liberal construction to Mr. O'Hanlon's papers because he proceeds *pro se*, *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991), but it does not act as his advocate and applies the same procedural rules and substantive law to Mr. O'Hanlon as to a represented party, *Murray v. City of Tahlequah,* 312 F.3d 1196, 1199 n.2 (10th Cir. 2008).

## ANALYSIS

I.      **Motion for Disqualification**[2]

A.      **Legal Standard**

"A motion to disqualify rests with the sound discretion of the trial court." *Quark, Inc. v. Power Up Software Corp.*, 812 F. Supp. 178, 179 (D. Colo. 1992). As the moving party, Mr. O'Hanlon has the burden of establishing the grounds for disqualifying defense counsel. *See Religious Tech. Ctr. v. F.A.C.T.Net, Inc.*, 945 F. Supp. 1470, 1473 (D. Colo. 1996). This is a significant task, as "courts have historically been highly cynical of motions to disqualify

---

[2] Because the Motion for Disqualification is not dispositive of any claims or defenses in this matter, the undersigned disposes of it by Order, rather than by Recommendation. *See Helmer v. Goodyear Tire & Rubber Co.*, 2013 WL 328951, at *2 (D. Colo. Jan. 29, 2013) (reviewing recommendation on motion to disqualify counsel under the contrary to law or clearly erroneous standard, because the motion was not dispositive of any claim or defense).

opposing counsel, noting that such motions are often dilatory or tactical devices." *Miller v. Deustche Bank Nat'l Trust Co.*, No. 12-cv-03278-PAB, 2013 WL 4776054, at *5 (D. Colo. Sept. 4, 2013). Thus, to guard against the nefarious purpose of securing a strategic advantage courts must make specific findings of facts and conclusions of law when considering whether the appropriateness of disqualification. *See World Youth Day, Inc. v. Famous Artists Merch. Exch., Inc.*, 866 F. Supp. 1297, 1299 (D. Colo. 1994). When, as here, the record is sufficient for making such a determination, no evidentiary hearing is required. *See Weeks v. Independent School Dist. No. I-89*, 230 F.3d 1201, 1212 (10th Cir. 2000) (specifying that no evidentiary hearing is necessary where record contains sufficient information to make specific findings of fact).

In evaluating a motion to disqualify in a federal case the court must decide the motion by "applying federal law." *Helmer v. Goodyear Tire & Rubber Co.*, No. 12-CV-00685-RBJ, 2013 WL 328951, at *3 (D. Colo. Jan. 29, 2013). That is, attorneys in federal cases are not only "bound by the local rules of the court in which they appear", but also by "the ethical rules announced by the national profession and considered in light of the public interest and the litigants' rights." *Cole v. Ruidoso Mun. Sch.*, 43 F.3d 1373, 1383 (10th Cir. 1994) (explaining that motions to disqualify in federal court affect substantive rights of the parties and are "decided by applying standards developed under federal law."). Mr. O'Hanlon's Motion for Disqualification focuses on the American Bar Association's Model Rules of Professional Conduct Rule 1.7 ("Model Rule 1.7"). [#64]. And although this District has adopted the Colorado Rules of Professional Conduct as its standards of professional responsibility, *see* D.C.COLO.LAttyR 2(a), this distinction makes no difference as Model Rule 1.7 and Rule 1.7 of the Colorado Rules of Professional Conduct are identical, *compare* MODEL RULES OF PROF'L

CONDUCT r. 1.7 *with* CO ST RPC Rule 1.7.[3]  Under either rule, Mr. Mann cannot represent a

client if such representation involves a concurrent conflict of interest.  Thus, Mr. O'Hanlon must

prove that

    (1)     [Mr. Mann's] representation of one client will be directly adverse to another
               client; or

    (2)     there is a significant risk that the representation of one or more clients will be
               materially limited by [Mr. Mann's] responsibilities to another client, a former
               client or a third person or be a personal interest of the lawyer.

MODEL RULES OF PROF'L CONDUCT r. 1.7(a)(1), (2).

**B.    Application**

Mr. O'Hanlon submits two arguments as to why the court should disqualify Mr. Mann

from representing Defendants under Model Rule 1.7.  First, he asserts that because each

Defendant is potentially liability to him to varying extents, "the representation of one client

would be directly adverse to the other clients."  [#64 at 4].  He explains that "Defendants may

disagree on trial strategy, the appropriateness of settlement, or may want to settle independently

of the other defendants."  [#79 at 6].  According to Mr. O'Hanlon, the various interests at stake

for each Defendant will create direct adversity among the group as a whole.  Second, he contends

that not all Defendants have consented to Mr. Mann's representation of them in this matter, and

---

[3] For consistency, this court cites to Model Rule 1.7 exclusively.  In addition, the title of Mr.
O'Hanlon's Motion for Disqualification asserts violations of Model Rule 1.9(a) and Canon 5 DR
5-105.  But he submits no substantive arguments regarding Model Rule 1.9(a), *see Funplex
P'ship v. F.D.I.C.*, 19 F. Supp. 2d 1201, 1206 (D. Colo. 1998) ("The party seeking
disqualification under Rule 1.9 must provide the court with specific facts to show that
disqualification is necessary and he cannot rely on speculation or conjecture."), or Canon 5 DR
5-105, which appears to be an outdated version of Model Rule 1.7.  Further, for the first time in
Reply, Mr. O'Hanlon asserts violations of Model Rules 1.8(f) and 5.4(c), *see* [#79], but this court
will not consider arguments raised for the first time in Reply.  *See Clawson v. FedEx Ground
Package Sys., Inc.*, 451 F. Supp. 2d 731, 734 (D. Md. 2006) ("The ordinary rule in federal courts
is that an argument raised for the first time in a reply brief or memorandum will not be
considered.").  Accordingly, the following discussion focuses solely on Mr. O'Hanlon's
arguments under Model Rule 1.7.

that this will materially limit Mr. Mann's responsibilities to some as opposed to others. He requests that, should it not disqualify Mr. Mann, the court order all Defendants to file their consent to Mr. Mann's representation on the docket.

Defendants AccessU2, E B H, LLC, and Palm counter that Plaintiff lacks standing to assert claims on behalf of adverse parties and that he fails to provide any "facts, law or cognizable basis to support his motion for disqualification." [#69 at 2]. I respectfully agree.

***Standing:*** It is axiomatic that a plaintiff must have standing to proceed in federal court. *See Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) (standing requires "(1) an 'injury in fact,' (2) sufficient 'casual connection between the injury and the conduct complained of' and (3) a 'likl[ihood]' that the injury 'will be redressed by a favorable decision.'" (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992))). This remains true even when moving to disqualify opposing counsel. *See Shapiro v. Rynek*, No. 13-CV-3086-WJM-KMT, 2017 WL 121617, at *3 (D. Colo. Jan. 11, 2017) (concluding that the movant must have standing to bring a motion to disqualify opposing counsel). For the following reasons, this court concludes that Mr. O'Hanlon lacks standing.

The irreducible minimum of standing requires the plaintiff to prove an injury-in-fact, one that is not merely hypothetical but is "concrete, particularized, and actual or imminent." *Colorado Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537, 544 (10th Cir. 2016). As an opposing party, who does not allege to be a former or current client, Mr. O'Hanlon has a difficult task of establishing that he suffered any cognizable injury from Mr. Mann's representation of Defendants. *See Gates Rubber Co. v. Bando Chem. Indus.*, 855 F. Supp. 330, 334 (D. Colo. 1994) ("As a general rule, courts do not disqualify an attorney on the grounds of conflict of interest unless the former client moves for disqualification."). Mr. O'Hanlon fails to demonstrate

how Mr. Mann's representation of Defendants has caused *Plaintiff* to suffer any injury-in-fact. Indeed, it appears from Mr. O'Hanlon's papers that he is asserting potential injuries to Defendants, which is insufficient to establish an injury-in-fact to Plaintiff. *Cf. Dawson v. City of Bartlesville, Okla.*, 901 F. Supp. 314, 315 (N.D. Okla. 1995) (noting that "invocation of [Oklahoma] Rule 1.7," which is similar to Model Rule 1.7, "does not alone provide standing for an antagonist to seek to disqualify opposing counsel. There must be some other ground for third-party standing.").

In some instances, however, an opposing party may have standing "where the interests of the public are so greatly implicated that an apparent conflict of interest may tend to undermine the validity of the proceedings." *Abbott v. Kidder Peabody & Co.*, 42 F. Supp. 2d 1046, 1050 (D. Colo. 1999) (citing *Beck v. Board of Regents*, 568 F. Supp. 1107, 1110 (D. Kan. 1983) (proclaiming that where the actions of a member of the bar "cast even the appearance of an impropriety upon the legal profession" in the public's view, review of that conduct may be warranted)). But Mr. O'Hanlon fails to demonstrate that such circumstances arise here. *Cf. Abbott*, 42 F. Supp. 2d at 1050–51 (finding the defendants had standing to move to disqualify the plaintiffs' counsel where plaintiffs' counsel represented 200 plaintiffs in a non-class action suit and the retainer agreement deprived the plaintiffs the right to control their own cases); *Smith v TFI Family Servs., Inc.*, No. 17-02235-JTM-GEB, No. 17-02236-JTM-GEB, 2018 WL 2926474, at *3 (D. Kan. June 28, 2018) (finding third-party standing where defense counsel represented entities that performed services for children in state custody, because such services sufficiently implicated the public's interests). Thus, Mr. O'Hanlon lacks standing to move to disqualify Mr. Mann under Model Rule 1.7.

***Merits:*** Even if Plaintiff had standing to move to disqualify Mr. Mann, his arguments fail on the merits as well. At bottom, Plaintiff believes that each Defendant is culpable to an unknown degree and may therefore try to implicate co-Defendants to skirt liability. *See* [#79 at 5]. But Mr. O'Hanlon submits no evidence to corroborate his assertions. And courts are wary of motions to disqualify opposing counsel because they have the potential for misuse to gain a tactical advantage or to harass opposing counsel; thus, such motions must be supported by more than speculation or conjecture. *See Sequa Corp. v. Lititech, Inc.*, 807 F. Supp. 653, 659 (D. Colo. 1992). Further, direct adversity between co-defendants does not exist even if one may indirectly implicate the other, especially when all Defendants deny liability in general. *See, e.g.*, *Shapiro*, 2017 WL 121617, at *4–5 (concluding that direct adversity did not exist between co-defendants when both defendants denied liability, even though one co-defendant testified that the other co-defendant may have conducted the public strip search at issue).

Next, Plaintiff fails to support his assertions that Mr. Mann's representation of all Defendants is materially limited given that some Defendants have not consented to his representation. Mr. O'Hanlon directs the court to emails exchanged several years ago concerning prior litigation, wherein some Defendants stated that Mr. Mann did not represent AccessU2's members. *See* [#64 at 10–11]. There is no such indication here. Moreover, as Plaintiff acknowledges, Mr. Mann has submitted various filings with this court on behalf of various Defendants, and under this District's Local Rules of Civil Practice the signing and filing of pleadings or documents constitutes an entry of appearance for an attorney on behalf of the filing-party. *See* D.C.COLO.LAttyR 5(a)(1); *Hamilton v. High Mountain Mining Co.*, LLC, No. 15-cv-0072-WJM-MEH, 2016 WL 8487966, at *3 n.2 (D. Colo. June 22, 2016) (noting that, although the plaintiff's counsel had not entered an appearance on behalf of proposed plaintiff the

South Park Coalition, she had signed a pleading on behalf of the South Park Coalition, which was sufficient under D.C.COLO.LAttyR 5(a)(1)). Therefore, nothing indicates a lack of consent to Mr. Mann's representation in this matter, and this court will not order Defendants to file proof of consent as an alternative to disqualifying Mr. Mann.

For this reason, and those above, I **DENY** the Motion for Disqualification.

## II.     Motion to Amend

### A.     Legal Standard

Rule 15(a) governs motions to amend when the moving party seeks leave to amend her pleading on or before the deadline for joinder of parties and amendment of pleadings set by the Scheduling Order. *See Fernandez v. Bridgestone/Firestone, Inc*., 105 F. Supp. 2d 1194, 1195 (D. Colo. 2000) (explaining that the movant need not demonstrate good cause under Rule 16(b) under such circumstances). Rule 15(a)(2) provides that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). The court may refuse leave to amend upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment. *See Frank v. U.S. West, Inc.,* 3 F.3d 1357, 1365 (10th Cir. 1993). Whether to allow amendment is within the trial court's discretion. *Burks v. Oklahoma Publ'g Co.,* 81 F.3d 975, 978–79 (10th Cir. 1996).

### B.     Application

In moving to amend, Mr. O'Hanlon asserts that because Defendants would not consent to his Second Amended Complaint, he now seeks permission from the court to do so. *See* [#74 at 2]. Plaintiff, however, provides no explanation as to why amendment is necessary or what the

amendment entails. Instead, he attaches a redlined version of the proposed Second Amended Complaint. *See* [#74-1].

Defendants oppose the Motion to Amend on three grounds. First, Defendants contend that Mr. O'Hanlon's Motion to Amend and proposed Second Amended Complaint are untimely, and that he provides no explanation for the delay. *See* [#88 at 1–3]. While undue delay may justify the denial of a motion to amend, *see United States ex rel. Ritchie v. Lockheed Martin Corp.*, 558 F.3d 1161, 1166 (10th Cir. 2009), Mr. O'Hanlon filed his Motion to Amend within the prescribed deadline for joinder of parties and amendment of pleadings, *see Smith v. Sprint/United Mgmt. Co.*, No. 15-cv-00550-WJM-KMT, 2015 WL 5444298, at *1 (D. Colo. Sept. 16, 2015) (holding as timely a motion to amend filed within the deadline set by the court). Second, Defendants contend that allowing further amendment to the FAC is prejudicial to both the court and Defendants. *See* [#88 at 1, 3–4]. But a review of the proposed Second Amended Complaint does not suggest that the amendments arise from different subject matter as the FAC or raise new factual issues, *see Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1208 (10th Cir. 2006); and though mindful of the age of this case and the resources expended by the Parties, "expenditure of time, money, and effort alone is not grounds for a finding of prejudice." *Bylin v. Billings*, 568 F.3d 1224, 1230 (10th Cir. 2009).

Nonetheless, this court agrees with Defendants' third point: despite the liberality of amendments pursuant to Rule 15(a)(2), a plaintiff must "give adequate notice to the district court and to the opposing party of the basis of the proposed amendment[.]" *See Calderon v. Kansas Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1186–70 (10th Cir. 1999). "And, where the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is

subject to denial." *Alpenglow Botanicals, LLC v. United States*, 894 F.3d 1187, ----, 2018 WL 3233544, at *10 (10th Cir. 2018) (internal brackets and quotation marks omitted) (quoting *Las Vegas Ice & Cold Storage Co. v. Far West Bank*, 893 F.3d 1182, 1185 (10th Cir. 1990)).  A review of the proposed Second Amended Complaint reveals that Mr. O'Hanlon removed some content while reorganizing the placement of other content, and also added several additional allegations regarding the Parties to this dispute and his belief that federal subject matter jurisdiction exists.  *Compare* [#19] *with* [#74-1].  But Mr. O'Hanlon fails to explain the basis for these amendments or why these factual assertions were unknown to him at the time of filing the FAC.  Indeed, it appears that all of the allegations arise from a time before the filing of the original Complaint.  Further, as discussed in detail below, the amendments do not cure the deficiencies identified by the AccessU2 Motion, rendering amendment futile.  *See Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1018 (10th Cir. 2013) ("A proposed amendment is futile if the complaint, as amended, would be subject to dismissal.").  Thus, this court respectfully **RECOMMENDS** that Plaintiff's Motion to Amend be **DENIED**.

## III.     Motions to Dismiss, or in the Alternative, Motions for Summary Judgment

### A.     Legal Standards

*Rule 12(b)(6):*  Under Rule 12(b)(6) a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff."  *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).  A plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555

(2007). Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (explaining that plausibility refers "to the scope of the allegations in a complaint," and that the allegations must be sufficient to nudge a plaintiff's claim(s) "across the line from conceivable to plausible."). The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

If the Parties rely on materials found outside the four corners of the complaint, the court has the discretion to convert a motion to dismiss to one for summary judgment. But in doing so, the court must provide the parties with notice so that all factual allegations may be met with countervailing evidence. *See* Fed. R. Civ. P. 12(d); *Price v. Philpot*, 420 F.3d 1158, 1167 (10th Cir. 2005). The conversion process is not automatic, however; the court may consider materials beyond the complaint without converting a motion to dismiss to one for summary judgment if the documents are central to the plaintiff's claims, referred to in the complaint, and if the parties do not dispute their authenticity. *See Cty. of Santa Fe, N.M. v. Public Serv. Co. of N.M.*, 311 F.3d 1031, 1035 (10th Cir. 2002). The court may also take judicial notice of undisputed court documents and matters of public record without requiring conversion. *See Tal v. Hogan*, 453 F.3d 1244, 1264 n. 24 (10th Cir. 2006).

Here, both the AccessU2 Motion and the Zorn Motion move for dismissal of the FAC or for summary judgment in the alternative. *See* [#49; #82]. In so moving, the AccessU2 Motion provides evidence outside the pleadings for this court's review, and Mr. O'Hanlon has similarly provided evidence outside the pleadings with his Response. *See* [#56]. For these reasons, this

court issued a notice, consistent with Rule 12(d), informing the Parties of its intent to convert the AccessU2 Motion and Zorn Motion to Motions for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, and permitted the Parties to submit additional evidence for this court's consideration. *See* [#94]; *but cf. Marquez v. Cable One, Inc.*, 463 F.3d 1118, 1121 (10th Cir. 2006) (explaining that the court need not notify the parties of its conversion of a Rule 12(b)(6) motion to a Rule 56 motion when the motion is styled motion to dismiss, or in the alternative, motion for summary judgment).

*Rule 56:* Pursuant to Rule 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if there is sufficient evidence so that a rational trier of fact could resolve the issue either way. A fact is material if under the substantive law it is essential to the proper disposition of the claim." *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011) (internal citations and quotation marks omitted). It is the movant's burden to demonstrate that no genuine dispute of material fact exists for trial, whereas the nonmovant must set forth specific facts establishing a genuine issue for trial. *See Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010). And the court will "view the factual record and draw all reasonable inferences therefrom most favorably to the nonmovant." *Zia Shadows, L.L.C. v. City of Las Cruces*, 829 F.3d 1232, 1236 (10th Cir. 2016).

When, as here, a defendant moves for summary judgment to test an affirmative defense, it is the defendant's burden to demonstrate the absence of any disputed fact as to the affirmative defense asserted. *See Helm v. Kansas*, 656 F.3d 1277, 1284 (10th Cir. 2011). The burden then shifts to the plaintiff to "demonstrate with specificity the existence of a disputed fact" as to the defendant's affirmative defense. *See Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997). To

satisfy this burden the nonmovant must point to competent summary judgment evidence; conclusory statements based on speculation, conjecture, or subjective belief are insufficient. *See Bones v. Honeywell Int'l, Inc.,* 366 F.3d 869, 875 (10th Cir. 2004). Nor may the nonmovant rely on "mere reargument of his case or a denial of an opponent's allegation" or it will be disregarded. *See* 10B Charles Alan Wright, et al., Federal Practice and Procedure § 2738 at 356 (3d ed. 1998). But this court is mindful of the liberal construction afforded to Mr. O'Hanlon's papers even at summary judgment. *See Firstenberg v. City of Santa Fe, New Mexico*, 696 F.3d 1018, 1024 (10th Cir. 2012).

### B. Application

The AccessU2 Motion submits three arguments for dismissal of the FAC or for summary judgment in the alternative: (1) the unambiguous Release Plaintiff signed at the conclusion of the prior state court litigation bars his claims in the FAC; (2) the three-year statute of limitations applicable to claims predicated on fraud, misrepresentation, and concealment bar Plaintiff's claims; and (3) claim preclusion bars any claims concerning the '821 Patent. *See generally* [#49; #63; #82]. This court focuses upon the first argument, and respectfully concludes that Defendants AccessU2, E B H, LLC, Palm, and Zorn are entitled to summary judgment.

<u>Undisputed Material Facts</u>

The following facts, drawn from the record and viewed in a light most favorable to Mr. O'Hanlon, are undisputed unless otherwise noted. In or around 2004 Mr. O'Hanlon "researched and developed certain technology for the delivery of information to mobile devices", and he "gained a patent pending" for the '821 Patent about December 17, 2005.[4] *See* [#19 at p.4, ¶ 1; *id.* at p. 14, ¶ 39; #95-1 at 2–3]. Mr. O'Hanlon secured an investor in Edson B. Hutchinson who

---

[4] This court takes judicial notice of the filing date of the '821 Patent as December 17, 2005. The '821 Patent issued on January 5, 2010.

converted his existing company into AccessU2 to provide working capital and to allow for future investments in the commercialization of the '821 Patent. *See* [*id.* at p. 4, ¶ 1; *id.* at p. 14, ¶ 41]. Mr. O'Hanlon's contribution to AccessU2 included the '821 Patent as well capital contributions, which resulted in his 41.4% ownership in AccessU2; he was also named Manager of AccessU2. *See* [*id.* at pp. 14–15, ¶¶ 42–43]; *see also* [#49-5 at 3 ("AccessU2's principal assets are its copyrighted website and the ['821Patent']"); #95-1 at 3]. At some point thereafter Mr. O'Hanlon "signed the Patent over to AccessU2."[5] [#19 at p. 21, ¶ 121]. Mr. O'Hanlon's relationship with other members of AccessU2 then became contentious. *E.g.*, [#19 at pp. 16–35; #95-1 at 14; #95-2].

Around June 2010, Mr. O'Hanlon filed Articles of Incorporation with the Colorado Secretary of State for Mobile Boomerang, LLC ("Mobile Boomerang"). *See* [#49-5 at 3; #95-1 at 8]. Mobile Boomerang, owned solely by Mr. O'Hanlon and operated by Mr. O'Hanlon and Cathy Faulkner, soon began selling similar services to AccessU2 customers through unauthorized use of the '821 Patent. *See* [*id.* at 4]. Upon learning of Mobile Boomerang, Defendants removed Mr. O'Hanlon as Manager of AccessU2. *See* [#19 at p. 35, ¶¶ 134–35; #95-1 at 12; #95-2].

AccessU2 then brought suit against Mobile Boomerang, Mr. O'Hanlon, and Ms. Faulkner. *See* [#49-1]. The Denver District Court issued AccessU2 a preliminary injunction restricting Mr. O'Hanlon's business dealings with AccessU2 and Mobile Boomerang, including his financial access to both companies. *See* [#49-2]. By Order dated June 23, 2011, the Denver District Court found Mr. O'Hanlon in violation of the preliminary injunction Order and held that

---

[5] This court takes further judicial notice of the information from the United States Patent and Trademark Office's Public Patent Application Information Retrieval System ("PAIR") that indicates that the first assignment from Mr. O'Hanlon to AccessU2 Mobile of the rights to the patent application resulting in the '821 Patent was recorded on October 27, 2009, with another assignment occurring on July 21, 2011. https://portal.uspto.gov/pair/PublicPair.

"AccessU2 has the sole and exclusive right to use the Patent" and that Mr. O'Hanlon and Mobile Boomerang "shall not use the Patent" until further order of the court; that Defendant Palm was to be the interim full receiver over the operations of AccessU2 and Mobile Boomerang; that Mr. O'Hanlon was not to engage in any control or management over AccessU2 or Mobile Boomerang, nor serve in any capacity within these businesses; and that Mobile Boomerang was to cease operations and Mr. O'Hanlon was prohibited from in any way harming AccessU2 or Mobile Boomerang. *See* [#49-3]. On February 13, 2012, the Parties agreed to settle the Denver District Court action, a condition thereof being that the June 23, 2011 Order was made permanent and incorporated into the Final Judgment of that matter. *See* [#49-4 at 2–4; #49-5]. Both Mr. O'Hanlon and Ms. Faulkner stated in open court that they understood the terms of the settlement and that they could comply with its terms, *see* [#49-4 at 6–7], and the Denver District Court entered Final Judgment on February 27, 2012 *pro nunc tunc* to February 13, 2012. *See* [#49-5].

Three years later the Denver District Court found Mr. O'Hanlon in contempt of court pursuant to Colorado Rule of Civil Procedure 107(a)(3) for violations of the February 27, 2012 Final Judgment. The Denver District Court concluded that Plaintiff had continued to use the '821 Patent and had improperly filed assignments of the '821 Patent with the United States Patent and Trademark Office to entities owned by Plaintiff. *See* [#49-6; #95-8]. *See also* https://portal.uspto.gov/pair/PublicPair. Mr. O'Hanlon failed to appear for a further contempt hearing and a bench warrant was issued for his arrest; he was remanded to the custody of the Denver Sheriff's Department. *See* [#49-8 at 3]. At a March 15, 2016 bond hearing, the parties agreed to settle the contempt proceedings in exchange for Mr. O'Hanlon signing a Release of all claims (present or future) against AccessU2 and its members, agents, employees, etc., *see* [#49-

9]; an Assignment of the '821 Patent and all legal title and rights to AccessU2, *see* [#49-10]; and a Revocation of Assignments of the '821 Patent improperly made to entities owned by Plaintiff, *see* [#49-11]. The Denver District Court entered a Contempt Order and Judgment incorporating the Parties' settlement of the contempt proceedings on March 29, 2016. *See* [#49-8].

On May 13, 2016, Mr. O'Hanlon filed a Notice of Appeal of the March 29, 2016 Contempt Order and Judgment. *See* [#63-3]. He also filed a total of 14 motions with the Denver District Court, including a motion to declare null and void the Release, Assignment, and Revocation of Assignment because he was forced to sign such documents under duress, *see* [#63-1]; the Denver District Court denied all 14 motions as groundless and frivolous, *see* [#63-2]. The Colorado Court of Appeals dismissed Mr. O'Hanlon's appeal and affirmed the Contempt Order and Judgment on August 17, 2017. *See* [#49-12]. This federal action followed.

Analysis

Defendants AccessU2, E B H, LLC, Palm, and Zorn argue that the signed Release precludes Mr. O'Hanlon from asserting any and all claims against them in this action. *See* [#49 at 9–10; #63 at 2–3]. "A release is the relinquishment of a vested right or claim to the person against whom the claim is enforceable." *Truong v. Smith*, 28 F. Supp. 2d 626, 630 (D. Colo. 1998) (citing *Neves v. Potter*, 769 P.2d 1047, 1049 (Colo. 1989)). "'A general release is an instrument by which one party relinquishes all its claims against another for consideration. Once a claim is released, the release bars the injured party from seeking further recovery.'" *Diebold Enterprises Sec. Sys., Inc. v. Low Voltage Wiring, Ltd.*, 597 F. App'x 475, 481–82 (10th Cir. 2015) (quoting *CMCB Enters., Inc. v. Ferguson*, 114 P.3d 90, 96 (Colo. App. 2005)). General contract rules of interpretation and construction apply to release agreements. *Squires ex rel. Squires v. Goodwin*, 829 F. Supp. 2d 1062, 1074 (D. Colo. 2011) (applying Colorado law).

The Release at issue here, signed and dated by Mr. O'Hanlon before a Notary Public of the state of Colorado, provides:

> I, Kenneth P. O'Hanlon, for and in consideration of certain good and valuable consideration, . . . do hereby *remise, release, and forever discharge E B H, LLC, [AccessU2] and Edson Hutchinson and any and all of its members, predecessors or affiliates, corporations or entities, its attorneys, employees, agents, and servants* from any and all liability for any and all claims, demands, damages, costs, liabilities, losses of services, expenses, compensations, reimbursements, actions, rights and causes of action of whatsoever kind and nature resulting from or in any way arising or growing out of, and by reason of, any and all known and unknown, foreseen and unforeseen, damages, expenses, costs, losses, liabilities, and the consequences thereof, which I may have or hereafter have, directly or indirectly, including, *claims for related to [AccessU2] membership interests, loss or forfeiture of my membership interests, alleged violations of the [AccessU2] Operating Agreement and any and all matters related to [AccessU2], E B H, LLC and Edson Hutchinson.*
>
> I have carefully read the above and foregoing General Release and know the contents thereof, and have signed the same as my own free and voluntary act *without coercion or undue influence*. I understand and agree that the signing of this Release shall forever be binding, and no recession, modification nor release of the undersigned from the terms of this General Release will be made for any mistakes.

[#49-9 (emphasis added)].

From this, this court "'must examine [the Release's] terms and attempt to determine the intent of the parties.'" *Level 3 Commc'ns, LLC v. Liebert Corp.*, 535 F.3d 1146, 1154 (10th Cir. 2008) (quoting *East Ridge of Fort Collins, LLC v. Larimer & Weld Irrigation Co.*, 109 P.3d 969, 973 (Colo. 2005)). In deciphering the parties' intent, "the instrument's language must be examined and construed in harmony with the plain and generally accepted meaning of the words used." *Leprino Foods Co. v. Factory Mut. Ins. Co.*, 653 F.3d 1121, 1127 (10th Cir. 2011) (internal quotation marks omitted) (applying Colorado law). "When a contractual term unambiguously resolves the parties' dispute, the interpreting court's task is over" because a written contract is to be enforced pursuant to its clear terms. *See Stroh Ranch Dev., LLC v.*

*Cherry Creek S. Metro. Dist. No. 2*, 935 F. Supp. 2d 1052, 1060 (D. Colo. 2013) (quotation marks omitted) (applying Colorado law).

Here, the Release's terms are unambiguous. Mr. O'Hanlon agreed, in exchange for sufficient consideration, to "release, and forever discharge [AccessU2], E B H, LLC and Edson Hutchinson and any and all of its members, predecessors or affiliates, corporations or entities, its attorneys, employees, agents, and servants from any and all liability for any and all claims" and "causes of action of whatsoever kind and nature" related to or stemming from any "claims [] related to [AccessU2] membership interests, loss or forfeiture of my membership interests, alleged violations of the [AccessU2] Operating Agreement and any and all matters related to [AccessU2], E B H, LLC and Edson Hutchinson." [#49-9]. The Release further provides that this includes any known or unknown, foreseen or unforeseen, costs and damages incurred presently or in the future whether direct or indirect. *See* [*id.*]. The unambiguous language of the Release expresses the Parties' explicit intent to put an end to their litigious history and to preclude future litigation concerning or stemming from the events and relationships giving rise to the litigation in the Denver District Court. *See St. Jude's Co. v. Roaring Fork Club, L.L.C.*, 351 P.3d 442, 452 (Colo. 2015) (holding that the unambiguous language of the settlement agreement barred the plaintiff's subsequent suit against the defendant even when the subsequent suit concerned new, but related, events). Accordingly, because Mr. O'Hanlon's claims in this action arise from and relate to his membership interests and loss of those interests in AccessU2, violations of the AccessU2 Operating Agreement, and are otherwise related to AccessU2, E B H, LLC, and Edson Hutchinson, this court concludes that the Release bars such claims from proceeding in this suit against any of the named Defendants. *See Long v. Wyss*, No. 14-CV-03200-RBJ, 2015 WL 509552, at *1 (D. Colo. Feb. 4, 2015) (entering judgment as a matter of

law in favor of the defendant because the plaintiff released all claims arising out of her relationship with the defendant pursuant to a settlement agreement between the parties); (*Harper v. Cronk*, No. 12-CV-02429-CMA-KLM, 2013 WL 5799907, at *5 (D. Colo. Oct. 28, 2013) (concluding that a state court settlement agreement barred the plaintiff's federal suit because he released "any claims" he may have had against the defendants concerning the events giving rise to the state court action).

Plaintiff counters that he signed the Release under "**extreme duress** while suffering PTSD and post-concussion syndrome" from an attack in jail. *See* [#56 at 6 (emphasis in original)]. "A contract is voidable on the grounds of duress if a party's manifestation of assent is induced by an improper threat that leaves no reasonable alternative." *Vail/Arrowhead, Inc. v. Dist. Court for the Fifth Judicial Dist., Eagle Cty.*, 954 P.2d 608, 612 (Colo. 1998). "[A]n improper threat is one that is so shocking that the court will not inquire into the fairness of the resulting exchange, or a threat in which the impropriety consists of the threat in combination with resulting unfairness." *Id.* at 613 (internal quotation marks omitted). In this regard, Plaintiff claims he only signed the Release because Mr. Mann denied his request to speak with the Denver District Court Judge, he feared imprisonment without bond for the contempt charge, he was distressed and confused, he was without medication, he feared for his life and well-being, and was "forcibly compelled to signed [sic] the Revocation-Assignment-Release-Docs per [Mr.] Mann's orders and threats[.]" [#56 at 7]; *see also* [#95 at 4–6]. Notwithstanding Plaintiff's assertions, this court concludes that Mr. O'Hanlon fails to demonstrate that he signed the Release under such circumstances that would render the Release voidable.

To start, Plaintiff filed a motion in the Denver District Court asserting the same allegations of duress, *see* [#63-1], which the Denver District Court denied because "Mr.

O'Hanlon previously represented to the Court that he and the Plaintiff [Defendants here] came to a resolution which resulted in the closing of this matter" and the motion was "groundless and frivolous", *see* [#63-2]. In addition, the Colorado Court of Appeals held that "[Mr.] O'Hanlon was not denied due process at the bond hearing" and therefore dismissed his contentions that he was coerced into signing the Release, Assignment, and Revocation of Assignment. *See* [#49-12 at 9–10]. Thus, the principles of claim preclusion "work[] to preclude the relitigation of [this] matter[] that [has] already been decided" in the prior state court proceeding. *Argus Real Estate, Inc. v. E-470 Public Highway Auth.*, 109 P.3d 604, 608 (Colo. 2005).

Second, Mr. O'Hanlon fails to provide any competent summary judgment evidence to refute that he voluntarily entered into the Release, as evidenced by his signing and dating the Release before a Notary Public, which contained an express provision that he freely entered into the Release. Indeed, the crux of Mr. O'Hanlon's adduced evidence concerns his allegations that Defendants violated federal tax law and deprived him of his fair membership interests in AccessU2. *See* [#95; #95-1 through #95-10]. And his allegations regarding duress, without more, are insufficient to create a triable issue of fact as to whether he signed the Release under duress, thereby rendering it voidable. *See Conagra Trade Grp., Inc. v. Fuel Expl., LLC*, 636 F. Supp. 2d 1166, 1173–1175 (D. Colo. 2009) (concluding as a matter of law that the defendant failed to adduce competent summary judgment evidence of duress based on the plaintiff's alleged threats to not purchase additional oil from the defendant, noting that the terms of the agreement were "not shocking or surprising enough to indicate that [the plaintiff's] threats actually subjugated [the defendant's] free will in signing those contracts."). Further, in consideration for the Release AccessU2, E B H, LLC, and Edson Hutchinson agreed to forego "additional punitive sanctions" regarding the finding of contempt against Mr. O'Hanlon for

violating the February 27, 2012 Final Judgment. *See* [#49-9]. Given the finding of contempt by the Denver District Court and the potential penalties that AccessU2, E B H, LLC, and Edson Hutchinson agreed to forego, this court concludes that the terms of the Release appear fair on their face, abating any appearance of duress. *See Electrology Lab., Inc. v. Kunze*, 169 F. Supp. 3d 1119, 1148 (D. Colo. 2016) (finding no duress where "the parties negotiated new terms which were not so one sided"); *Conagra Trade Grp., Inc.*, 636 F. Supp. 2d at 1173 (stating that "if the agreement appears reasonable, the implication is that duress was not a factor in its formation.").

Based on the foregoing, this court concludes that Defendants AccessU2, E B H, LLC, Palm, and Zorn are entitled to summary judgment because the Release bars Plaintiff's claims in this matter against *all* Defendants. Therefore, this court respectfully **RECOMMENDS** that the AccessU2 Motion and Zorn Motion be **GRANTED**.

## IV.    Motions to Quash

Though the court recommends dismissal of this action in its entirety, it turns now to considering the motions filed by those individual Defendants who assert that they have not been properly served with the operative FAC.

### A.    Legal Standard

Rule 4(e) of the Federal Rules of Civil Procedure governs service of process upon individuals located within a judicial district. Fed. R. Civ. P. 4(e). The Rule allows for service by methods approved by state law "where the district court is located or where service is made;" or by delivering the summons and complaint on the individual personally, leaving the summons and complaint with an individual of a suitable age at the person's dwelling, or serving an authorized agent. *Id.* Colorado law provides for service of an individual by, *inter alia*, leaving a copy of the summons and complaint at the "person's usual place of abode", the person's "usual

workplace, with the person's supervisor, secretary, administrative assistant, bookkeeper, human resources representative or managing agent", or by delivering a copy to the person's authorized agent. Colo. R. Civ. P. 4(e)(1).

"The serving party bears the burden of proving the validity of service of process". *Williams v. US Airways/Am. W. Airlines*, No. CIVA08CV00853-CMACBS, 2009 WL 528573, at *6 (D. Colo. Feb. 27, 2009) (brackets, citations, and internal quotation marks omitted). "A signed return of service constitutes *prima facie* evidence of valid service, which can be overcome only by strong and convincing evidence." *Davidson v. Bank of Am. N.A.*, No. 14-CV-01578-CMA-KMT, 2014 WL 6464576, at *2 (D. Colo. Nov. 18, 2014) (citations and internal quotation marks omitted). "Objections to the sufficiency of process must be specific and must point out in what manner the plaintiff has failed to satisfy the service provision utilized." *Benton v. Town of S. Fork & Police Dep't*, No. 12-CV-00336-CMA-KMT, 2013 WL 69189, at *1 (D. Colo. Jan. 7, 2013) (citations and internal quotation marks omitted). The court construes and resolves any factual disputes regarding service in favor of the plaintiff. *See id.*

## B. Application

***Defendant Cohig's Motion to Quash:*** Defendant Cohig moves to quash service of process of the FAC, arguing that he has not been served personally or by any manner prescribed by Rule 4(e) of the Federal Rules of Civil Procedure or Rule 4 of the Colorado Rules of Civil Procedure. *See* [#81 at ¶¶ 1–4]. He further avers that the alleged service on a woman named "Karen" at the Douglass Colony Group is insufficient because (1) this person is a "payroll administrator for the Douglass Colony Group," not Defendant Cohig's registered agent, secretary, bookkeeper, or administrative assistant as contemplated by Rule 4 of the Colorado Rules of Civil Procedure, and (2) Ms. Karen Schissler attests that she is the only "Karen" at

Douglass Colony Group and, despite covering the reception desk for a brief period on April 30, 2018, she was never served by a gentleman on the date in question. *See* [*id.*; #81-1; #92].

Mr. O'Hanlon counters that Ms. Schissler's position of "payroll administrator" is equivalent to "bookkeeper" as contemplated under Rule 4(e)(1) of the Colorado Rules of Civil Procedure, because she "administers and keeps the 'books' for the payroll on 475 employees including Cohig." [#89 at 3]. He also suggests that Ms. Schissler, by covering the reception desk and greeting customers and guests and performing traditional secretarial tasks, was thereby serving as a "temporary secretary" for Rule 4(e)(1) purposes. *See* [*id.* at 3–4]. Respectfully, I conclude that Ms. Schissler is not Defendant Cohig's "supervisor, secretary, administrative assistant, bookkeeper, human resources representative or managing agent" as contemplated by Rule 4(e)(1).

To start, the executed proof of service indicates that the process server served Ms. Schissler at Douglass Colony Group on April 30, 2018. *See* [#77]. Despite Ms. Schissler's attestation that no one served her any papers for Defendant Cohig on this day, this court accepts the executed and notarized proof of service as a truthful representation that Ms. Schissler was in fact served on April 30, 2018. *See Goodman Assocs., LLC v. WP Mountain Props., LLC*, 222 P.3d 310, 316 (Colo. 2010) (finding as conclusive proof of service an affidavit of service signed by the process server, which stated that service was executed).

Next, this court must determine whether Ms. Schissler was an appropriate person to serve under Rule 4(e)(1) of the Colorado Rules of Civil Procedure. Rule 4(e)(1) does not define "secretary" or "bookkeeper"; there is indeed little "Colorado case law considering who may fall within the categories of individuals contemplated by [Rule] 4(e)(1)'s list[.]" *Goodman Assocs., LLC*, 222 P.3d at 316. Bookkeeper has been defined as someone "who records the accounts or

transactions of a business", *Bookkeeper*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/any (last visited July 9, 2018), and "secretary" has been defined generally as someone "who is employed to take care of records, letters, and routine work for another person", *Secretary*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/any (last visited July 9, 2018).  Arguably, Ms. Schissler may meet these definitions based on her position as a payroll administrator and when she briefly covered the reception desk on April 30, 2018.  But even still, this court must determine whether Ms. Schissler qualifies as *Defendant Cohig's* bookkeeper or secretary.

The Colorado Supreme Court considered this question in *Goodman Associates, LLC v. MP Mountain Properties, LLC*, 222 P.3d 310 (Colo. 2010).  There the plaintiff personally delivered the complaint and summons to an employee of the defendant, who worked as a "Personal Assistant" for the defendant, at the defendant's principal office.  *Id.* at 313.  The "Personal Assistant" then placed the complaint and summons in the mailbox of the defendant's registered agent.  *Id.*  In finding service on the "Personal Assistant" sufficient as to the defendant's registered agent and ultimately the defendant, the Colorado Supreme Court explained that the 2006 amendments to Rule 4(e)(1) "modernized" "the categories of persons to whom process may be delivered[.]"  *Id.*  at 317.  It continued that the amendments were

> done to make it clear that alternate service at the workplace is limited to service on "the person's secretary, etc.," not on a secretary . . . at the person's workplace. Service on a supervisor or manager of the business offers no assurance that the defendant will ever receive actual notice . . . . If the defendant is to receive notice, it is likely to occur only when delivery is made to the defendant's subordinate, who will feel a genuine obligation to deliver the process.

*Id.* (quoting Richard P. Holme, *2006 Amendments to the Civil Rules: Modernization, New Math, and Polishing*, 35 COLO. LAW. 21, 22 (May 2006)).  The Colorado Supreme Court concluded that, "while service at a person's workplace is permissible, it is only effective in achieving the

goal of notice when service is made upon an employee whose position presumptively includes delivery of papers to the relevant party." *Id.* (noting that service to *any* employee may be insufficient and that the rule provides for service to "an assistant who performs clerical duties for the person to be served."). Thus, service on the "Personal Assistant" was proper under Rule 4(e)(1) because she constituted an administrative assistant to the registered agent of the defendant even though she performed only scheduling and filing for the defendant's registered agent and also served three other persons to whom she reported directly. *See id.* at 317–318.

There is no indication here that Ms. Schissler provided any relevant services to Defendant Cohig. Indeed, Ms. Schissler attests that she is the payroll administrator for Douglass Colony Group's 475 employees, does not work for Defendant Cohig, and is not authorized to accept service on behalf of Douglass Colony Group or Defendant Cohig. *See* [#81-1 at ¶¶ 1–2]. At most, Ms. Schissler appears to be an employee of Douglass Colony Group, Defendant Cohig's employer, but nothing suggests she is a proper person to accept service under Rule 4(e)(1). *See Shields v. Duncan*, No. 14-CV-02231-RM-MEH, 2015 WL 3947221, at *3 (D. Colo. June 26, 2015) (finding service on the manager of the motel-defendant insufficient to constitute service on the motel-defendant's registered agent, because the manager was not the registered agent's "secretary, administrative assistant, bookkeeper or managing agent." (citing *Goodman Assocs., LLC*, 222 P.3d at 317)). Without more, this court concludes that service on Ms. Schissler was insufficient as to Defendant Cohig, and, therefore, Defendant Cohig's Motion to Quash is **GRANTED**.

In light of the foregoing, I also respectfully **RECOMMEND** that Defendant Cohig be **DISMISSED without prejudice** from this matter given Plaintiff's failure to serve Defendant Cohig in accordance with Rule 4(m) of the Federal Rules of Civil Procedure. Rule 4(m)

provides, "If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m); *cf.* D.C.COLO.LCivR 41.1 (providing for dismissal with or without prejudice for failure to comply with the Federal Rules of Civil Procedure). Plaintiff filed his original Complaint on January 24, 2018, and the filing of FAC on February 13, 2018 does not restart the window for service except as to those defendants newly added in the amended complaint. *See Bolden v. City of Topeka, Kan.*, 441 F.3d 1129, 1148 (10th Cir. 2006). Mr. O'Hanlon named Mr. Cohig as a defendant in his original Complaint [#1 at 1], and Plaintiff has not effected service upon Defendant Cohig within 90 days of January 24, 2018. Further, this court has provided Mr. O'Hanlon several opportunities to effect proper service on Defendants and has warned him that failure to do so may result in their dismissal from this action. *See* [#65 at 6]. Accordingly, a recommendation to dismiss Defendant Cohig without prejudice appears warranted. *See Vuolo v. Garfield Cty. Sheriffs*, No. 09-CV-01476-ZLW-KMT, 2010 WL 326320, at *1–2 (D. Colo. Jan. 20, 2010).

***Defendant Fossenier's Motion to Quash:*** Defendant Fossenier moves to quash service of process of the FAC because Plaintiff apparently mailed a copy of the FAC and Summons via certified mail on an unknown date. *See* [#86 at ¶ 1 (citing [#76])]. Defendant Fossenier contends that service via certified mail is appropriate only by order of the court in certain in rem proceedings, and because Plaintiff has not properly served any papers on Defendant Fossenier in accordance with Rule 4(e) of the Federal Rules of Civil Procedure or Rule 4 of the Colorado Rules of Civil Procedure such service by certified mail must be quashed. *See* [*id.* at ¶¶ 2–5; #86-1 at ¶¶ 1–3 (Defendant Fossenier attesting that he has not been served any papers in this action

nor signed any certified mail receipts)]. Plaintiff has not responded to Defendant Fossenier's Motion to Quash, but in requesting an extension of time to serve Defendant Fossenier Mr. O'Hanlon explained his unsuccessful attempts to serve Defendant Fossenier at his place of business and his believed personal residence. *See* [#70 at 3–4]. Mr. O'Hanlon proclaims that he believes Defendant Fossenier is attempting "to avoid service." [*Id.* at 3].

Rule 4(e) of the Federal Rules of Civil Procedure does not contemplate service via mail, certified or otherwise. Fed. R. Civ. P. 4(e). Rule 4(g) of the Colorado Rules of Civil Procedure allows "service by mail or publication," but "only in actions affecting specific property or status or other proceedings in rem" and only after the serving party files a verified motion seeking permission to do so. Colo. R. Civ. P. 4(g). This civil action is not one of those contemplated by Rule 4(g). However, Rule 4(f) provides for substitute service when Rule 4(g) is otherwise not applicable but likewise requires the serving party to file a motion requesting substitute service that demonstrates the serving party's due diligence in attempting to serve the identified party. *See* Colo. R. Civ. P. 4(f). Plaintiff has not filed a formal motion requesting permission to serve Defendant Fossenier by substitute service. And while he does represent to the court his struggles in serving Defendant Fossenier, and alludes to his belief that Defendant Fossenier may be evading service, I respectfully conclude that service on Defendant Fossenier by certified mail was improper. In light of the several extensions Mr. O'Hanlon has received from this court regarding service in this matter, further extensions do not appear to be appropriate. *See* [#26; #65; #68; #73]. Accordingly, Defendant Fossenier's Motion to Quash is **GRANTED**.

Moreover, as with Defendant Cohig, I also respectfully **RECOMMEND** that Defendant Fossenier be **DISMISSED without prejudice** from this matter given Plaintiff's failure to serve Defendant Fossenier in accordance with Rule 4(m) of the Federal Rules of Civil Procedure.

Again, Mr. O'Hanlon has failed to properly serve Defendant Fossenier within the 90 days contemplated by Rule 4(m) despite this court granting several opportunities to do so and warning Plaintiff that his continued failure may result in Defendant Fossenier's dismissal from this action. *See* [#65 at 6]. Accordingly, a recommendation to dismiss Defendant Fossenier without prejudice also appears warranted. *See Vuolo*, 2010 WL 326320, at *1–2.

*Defendants EBH, LLC, Crane, Hutchinson, and Does 1–15:* Relatedly, Plaintiff has never provided proof of service for Defendants Crane, Hutchinson, EBH, LLC, and Does 1–15. The time to serve these Defendants has since expired, and there is no indication that Plaintiff has attempted service despite several extensions of time to do so and a warning that continued failures may result in this court recommending their dismissal. Thus, this court also respectfully **RECOMMENDS** that Defendants Crane, Hutchinson, EBH, LLC, and Does 1–15 be **DISMISSED without prejudice** for failure to serve under Rule 4(m) of the Federal Rules of Civil Procedure.

## CONCLUSION

For the reasons stated herein, I respectfully **RECOMMEND** that:

(1)     The AccessU2 Motion [#49] be **GRANTED**;

(2)     The Zorn Motion [#82] be **GRANTED**;

(3)     Summary judgment enter in favor of Defendants AccessU2, E B H, LLC, Palm, and Zorn and against Plaintiff, and that Plaintiff's claims be **DISMISSED with prejudice** as to these Defendants; and

(4)     Defendants Cohig, Crane, EBH, LLC, Fossenier, Hutchinson, and Does 1–15 be **DISMISSED without prejudice** for failure to serve these Defendants in accordance with Rule 4(m) of the Federal Rules of Civil Procedure; and

(5)     Plaintiff's Motion to Amend [#74] be **DENIED**.[6]

**IT IS FURTHER ORDERED** that:

(1)     Plaintiff's Motion for Disqualification [#64] is **DENIED**;

(2)     Defendant Cohig's Motion to Quash [#81] is **GRANTED**; and

(3)     Defendant Fossenier's Motion to Quash [#86] is **GRANTED**.

DATED: July 26, 2018                                     BY THE COURT:

_____

Nina Y. Wang
United States Magistrate Judge

---

[6] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).